2023-20226 Rohan Bakane v. Er-Im Jaddou. You may proceed. Did I pronounce all of those incorrectly? I believe it's Bakane. Bakane? Yes, ma'am. Okay, thank you. I appreciate that. Everybody should have their name pronounced correctly. I appreciate that. Please don't take the time from the person, from the lawyer yet. I have a feeling you'll be sick of me talking here by the end of the morning. Okay, so it's Bakane? Yes, ma'am. And how do you know how to say the Director of U.S. Citizenship's name? Is it Jaddou? Jaddou. I think so. Okay, thank you. Okay. May it please the Court, my name is Brad Banas and I represent the Bakanes in this initial argument. This Court should vacate the lower court's decision because this Court has jurisdiction over Mr. Bakane's challenge to unlawful withholding. And once this Court finds jurisdiction, it should opine on the exclusively legal question that's been briefed throughout these cases and cases last summer and find the agency's retrogression hold policies unlawful and order them to make a decision. This case, the jurisdictional arguments in this case— Order them to make a decision. So my first question is about standing, and I guess that is going to importantly depend on what exactly you're asking for. So what are you asking for, and please answer that in terms of standing, especially redressability. Your Honor, we're asking to declare the retrogression hold policies unlawful. Okay, so the government doesn't use the term retrogression hold policies, I don't think. So what exactly would we declare unlawful? Yes, Your Honor. So there's no statute that says an immigrant visa must be immediately available at the time of approval. There's no regulation that says an immigrant visa has to be immediately available at the time of approval. The only sub-regulatory guidance we see on this is where they say if you don't have a visa immediately available, we're not going to make a final decision. For USCIS, I think it's on their website or in their policy manual. For the Department of State, it's on the visa bulletin, Your Honor. Neither of those are binding sources of law, and so that's what we're asking you to set aside. So, but you can't necessarily get the visa, your client, nonetheless, if there is none available. Your Honor, there are visas available today by definition. 8 U.S.C. 1151 says that Department of State and USCIS cannot allocate visas in the first quarter of the fiscal year, in the second quarter of the fiscal year, beyond 27 percent of those available. So we're in the second month of the second quarter, so there's more than 50 percent of the immigrant visas available by definition. And those are available. And this is where— Doesn't Congress require those to be allocated on a priority basis? Congress does require that, Your Honor. So would you be asking us to let your client skip the line? No, Your Honor. This is an unlawful withholding case, not an unreasonable delay case. And in the transcript with Judge Ellison, that's where the confusion really lied, in my opinion. Unlawful withholding cases, if the agency is just outright refusing to do something it's required to do, the appropriate remedy is not to balance equities, not to determine whether it's a reasonable delay or not, but it's in order to compel them to make a final decision. And the Tenth Circuit's case in Forest Guardians really is kind of the classic case on that difference, and I would urge the Court to follow that. So you want us to order them to adjudicate the visa? Correct, Your Honor. Okay. Now, if the government stands up and says, if we did that, there are no visas available by law for your clients, does that mean there's redressability or not? I think that's the crux of the issue. I do not think they will say there's no visas available. Again, there are— That they can give your clients by law. I'm sorry, Your Honor, could you say that again? Visa available sort of generally, in the abstract, in the universe, in the world, but visas that can be awarded to your client by law. In other words, if we ordered them to give your client a visa, are we ordering them to violate a statute? No, Your Honor. Okay. Well, I hear what they have to say about that. I appreciate that, Your Honor. And I will say, again, the government's briefs are full of statements that say exactly what you said, Your Honor. The problem is the statute doesn't say that, the regulations don't say that, and they interpret these under the guise of a plain language argument. And the last time we were here in the Fifth Circuit on this similar case, you know, the government struggled to identify the appropriate statute or regulation that did require a visa to be immediately available at approval. Was that at the Lee case? No, Your Honor. No, it was a different one. Which one was that? Coppola, Your Honor. The Coppola case, yes. Yes, Your Honor. Well, what's wrong with the reasoning in the unpublished decision that our court has issued in the Lee case? Are you familiar with that case? I am, Your Honor. That's my case also. Yes. I'm a one-trick pony. What can I say? Lee case deals with an unreasonable delay, and what that panel said was that we can't do an unreasonable delay if there's not a deadline in the statute. Again, this isn't an unreasonable delay case. You framed it. It's a different case. That's right, Your Honor. This is an outright refusal of the agency to make a final decision on a green card application. If there was no visa available, would that give you any priority, like that you would go to the head of the line for when they would be available? Sometimes you get on a list, and you do stay on the list in your order. In fact, I've had a case where people aged out. Unfortunately, they would always age out before they could ever get to the list because it was a Byzantine system that was a ridiculous list because you would always age out before you would ever get to your place in the line. And so it was frustrating for people. But would there be a place where you would go to the front of the line or something because you had been in priority of when it should have been given, or would that totally be up to the agency where they would place you? I want to answer it like this, Your Honor. The statute requires the agencies to do it on a chronological order. We go to the priority date of the actual visa and do it that way. In practice, that doesn't happen. But it should be by chronological order? Of priority date, yes, Your Honor. Priority date meaning for Indian nationals like Mr. Bakane, he's had an approved visa for 12 years, but because of the visa availability issues, it only became available in 2020. And it then retrogressed. Has it been affected at all by the issues of last year's visas where some were given out and they had to redo it with some of the visas? I think it's a different type of visa. I bet it wasn't affected by that. I don't think so, Your Honor. Okay, I'll ask the agency. No, and at the end of the day, I have clients whose priority date is 2014, and Mr. Bakane's is 2012, and they got approvals and he didn't. And again, what we're talking about now is an intense question of fact. Does the agency actually do this? And so in the transcript here, what I was urging Judge Ellison to do was basically, you've got to make this threshold decision. Is this policy lawful? And if it is, we lose. If the agency can lawfully refuse to adjudicate green card applications when the visa is not immediately available, we lose. However, if we win on that point, and this is what I call retrogression hold policies are unlawful, then we have a second cause of action for unreasonable delay. And that's where we do the discovery to find out if the government actually adjudicates What is the succinct answer to the question that I think is very important that Judge Duncan was asking at the beginning about, I think it goes to standing, whether there is redressability. Could your client be awarded anything? What is your succinct answer to that? Yes. That's the succinct answer. Because? Because there are visas available now, meaning that if there's a visa store, there are visas on the shelf, and under 8 U.S.C. 1255A, the adjustment of status statute, it only requires there to be a visa immediately available at filing, not at approving. Okay, at filing. Okay. How does that affect, though, what if we had heard this case in November? Would you give the same answer, that visas were immediately available? You know, is it just serendipitous that we happen to be having this in the second month of the year? Your Honor, in November there would be even more visas available. Okay. Because the store gets restocked October 1st. Well, then the question should have asked about September. That's fair. The agency consistently wastes visa numbers through inaction and delay. So 2020, I think they wasted $65,000. 2021, somewhere around there. They don't roll over? They do not. Well, they do roll over to family-based. So they're lost to the employment-based system. So they're not wasted. They're rolled over. They are wasted for my clients because they don't have a family-based application. So they divert them to a different category of applicant. Correct, Your Honor. Is that what you're saying? They roll over from employment-based to family-based for the following year, which means when the agency wastes 60,000 visas. Is that a policy of the agency because they're valuing family-based more than employment? This is statutory. You know, it's what they did in 1965, Congress did, when they got rid of certain hemisphere quotas. So they couldn't say, well, we like family better, so we're going to just save them all back for that. That's against the statute? That's right, Your Honor. Let me ask you, you brought up Section 1255A, I think, which I guess is the key statute for your claim, which says adjustment of status, quote, may be adjusted by the attorney general in his discretion and under such regulations as he may prescribe, and then there's the requirements. Now, I'm looking at Section 1252 of 8 U.S.C., which provides that no court shall have jurisdiction to review any other decision or action of the attorney general, which is specified under this subchapter to be in the discretion of the attorney general. So why doesn't that strip us of jurisdiction to review a decision or action by the attorney general with respect to visa adjustment? So first, Your Honor, that's 8 U.S.C. 1252A2B2. Correct. That statute's irrelevant to this case. Well, I just read it to you. It doesn't sound irrelevant. Well, the statute just above it identifies applications under 8 U.S.C. 1255A, so the specifics are going to control the general, and we can't interpret that 1252A2B2 to cover the ---- Well, that's any judgment regarding the granting of relief under Section 1255. Your Honor, to the ---- I guess there hasn't been a judgment here. To the extent that that is relevant to this analysis, I would suggest that this court would be required to interpret judgment and action to mean nonjudgment and inaction. You would be required to interpret it to be its opposite or its antonym, and if the court does that, it renders the terms completely meaningless. If it means everything, it means nothing. Well, the decision on retrogression, isn't that a decision that's being made? No, Your Honor. This is ---- Again, there's no regulation. There's no statute. This is a policy, and it violates the statute. I would suggest that you cannot exercise discretion. Well, whether it violates the statute or not, we would be stripped of jurisdiction to review it. Your Honor, I would suggest that the agency doesn't look at this as a discretionary matter. They believe that they are bound by law to not approve a green card application if the visa is not immediately available at approval. Well, I'll hear what they have to say about that. That's fair, yeah. And I would point that out, Your Honor. If we get to the meat of this case, and, you know, we have one decision on this from the Ninth Circuit in a case called Bavaria, and I think a description of that case really highlights the problems for the government. They look at 1255A, and they look at that Section 3 that says a visa must be immediately available at filing. It stops. And the Ninth Circuit said, that's silence. It doesn't address the issue that we're bringing up, whether there has to be a visa immediately available at approval. The Ninth Circuit then looked for regulations and said that a regulation filled the gap that would require there to be an immigrant visa immediately available at approval. Again, the Ninth Circuit says this fills the gap. The problem is that's a 1965 regulation, and the change in statute was in 1976. So the INS was apparently incredibly prescient to interpret a gap that was only created 12 years later. And if you look at the actual regulation one step further, it doesn't require a visa to be immediately available at approval. Circling back to Judge Duncan's question, explain again why the decision to retrogress visas was not a decision, judgment, whatever, about how to allocate visas when demand exceeds supply. Two points. The government doesn't see it as discretionary. I do not think they will argue that they can approve some applications and not others when there's no visa immediately available. If the agency treats it as a binding decision, then it's not a discretionary decision. The second part is, again, those statutes require action. They require judgment. And to interpret action to be inaction and judgment to be nonjudgment, I think, will render that particular statute meaningless. It will cover everything and nothing. And again, I will just point out, the statute above it specifically identifies adjustment of status. So I do think that's the more relevant statute here, because if 1252A2B2 fills in the gaps from 1252A2B1, it renders 1252A2B1 superfluous. I see my time is out. Thank you, Your Honor. Thank you. You've saved time for rebuttal, and we'll be hearing from you later. Thank you. Either at rebuttal or in some other case, I would be interested in hearing about whether the track factors are relevant to this discussion. And also from you. Good morning, Your Honors. May it please the Court. My name is Alexandra McTague, and I represent the government in this matter. The appellants bring a broad challenge to USCIS's method for approving these I-485 adjustment of status applications. They bring it as an unlawful withholding claim under the APA, and they bring it based on the legislative history of Section 1255A. The government believes that their interpretation of the statute is completely wrong. But before we get there, we need to address the jurisdictional issues of standing and the basis for unlawful withholding. As to standing, there's no traceability to the agencies in this matter, and there's no redressability, because a favorable decision from this Court isn't going to fix the Bacanes injury. There's no traceability, because their complaint really is with the statutory system that Congress set up. Congress limits the number of visas available. Congress limits them on a worldwide basis, on a country basis, on a preference category basis. What do you do with the comment that there are many available and that, in fact, they're wasted every year, many, many of them? So Congress also says these visas are supposed to be allocated in priority date order. And they haven't been in this circumstance, have they? Because they pick 14 before 12? I don't know the particular circumstance of him saying somebody was picked in 14 before 12. But what happens is that when the State Department's Visa Bulletin publishes an estimate that says, we think your priority date is up and you can file your application, there's a flood of applications that come in. And so when the Bacanes priority date, which is November 2012, came up, they filed their applications along with all these other people. But the applications then require processing, and the processing takes time. They need to get biometrics done. They need to submit medical forms. In the case of the Bacanes, they had filed under an EB3 category. They switched later in May of 2013 to EB2 because it was a more favorable date. Then that began processing, and they filed their case maybe three weeks later. But in the meantime, USCIS issued two requests for evidence saying, we need more information to complete your application. And they didn't get that information in until the dates had retrogressed. The retrogression occurs because all these people flood in and the estimates are off. And so all of a sudden there's more people in line than expected. You're using the term retrogression. Can we use the term retrogression? We can. So we do use the term retrogression in terms of the dates moved backwards, the priority dates. The Bacanes thought they were at the front of the line, and it turns out they weren't because there were more applications filed. But we don't use this idea of a retrogression hold policy, and there's no real meaning to that in terms of USCIS. What USCIS does is when the dates move backwards, somebody filed but their application didn't get approved in time, they just allow it to remain pending until a visa number becomes available. And they do that to avoid hardship. And the reason for that is that when you file your I-485 adjustment of status application, you can then seek certain benefits that relate to being able to switch employers or being able to travel outside the country and come back in. Those are linked to that I-485 application. So if you get to a point in the process where that application could be approved, except that that applicant is no longer at the front of the line, there's more people waiting ahead of them, they let it remain pending. Because if they deny it, the applicant loses all those benefits. They have to go back and refile their I-485, refile for the benefits, and start over again. And so the discretionary decision to leave these pending is to avoid that hardship of denying all the applications and making everyone reapply. Does Congress allow you to make that discretionary decision? So we would say yes, and that is actually based on the legislative history. So when you look at the legislative history, in 1952, the INA was enacted, and it said you had to have a visa number available at filing and at approval. In 1960, it was amended, and it said the visa number has to be available at approval. In 1965, USCIS, or legacy INS, promulgated a regulation that said, I'm sorry, in 1960, they promulgated a regulation that said, you can file based on the visa bulletin dates if you are within 90 days of the current date. If you are 90 days beyond the current date, you can file your application, but we're going to hold it until a visa becomes available to you. So in that 1965 regulation, they enacted these policies to hold these applications in abeyance. And from INS's perspective, and USCIS's now, in 1976, that was Congress actually codifying their prior practices, because when you look at the history, it's available at filing and approval, then available at approval, and then available at filing. Congress is trying to figure out, for these mechanical requirements of when the attorney general can exercise his discretion under 1255A, what is going to work best, because this system is so complex, and there are so many people seeking visas. Well, when you talk about legislative history, I think what you're talking about is actually the history of the legislation, not the legislative history, because you're also saying that legislative history is irrelevant, which it is. Correct. But the history of legislation is not. Correct, and so from our perspective, what happened here was that, and this is in the 1979 memo that was attached to the amended complaint, it's in the Record on Appeal at 338 to 340, but it's a legal opinion from INS that says, this is how we do, in fact, interpret it, because there are these retrogression issues. It does cause hardship, and so Congress actually codified this hold policy that we had in place. Now, there was a change to it that Congress made. Congress said the visa has to be, the visa number has to be available at filing. The regulation had said. 1255A? I'm sorry? Is that 1255A? Yes. Okay. The regulation had said it has to be within 90 days. So this is very interesting and helpful. However, 1255A explicitly recognizes the Attorney General's discretion. Does it not? It does. Okay. It does. And here's the answer to the question, isn't it? I believe it is. Yes, all of this is within the Attorney General's discretion. They gave the Attorney General broad discretion to make these kinds of judgments and decisions. To adjust status, and this is a status adjustment. It is. And it says the Attorney General may, at his or her discretion, adjust status, provided, sure, there's some minimum requirements. Correct. Okay. Correct. Does the Attorney General have the discretion to never adjust status and just never process people? I would say that under the plain terms of the statute, the Attorney General does have complete discretion on how they're going to do that. Or whether and if to do that. If to do that. I would say yes. The statute does not require adjustment. Congress says you're supposed to give these visas out. The agency could choose just never to give any visas out to the people in the employment category because it's discretionary. Is that your position? My position is that Congress says these are the visas that are available in these different categories, and, Attorney General, we leave it to you whether you're going to adjust status for any of these particular people, so long as they meet these initial requirements. So they could let nobody get them, and they could just all just sit there forever? I mean, they don't do that. No, could they? Is that discretionary power? Because I thought that the D.C. Circuit and others have said that you have to do things, you have to do them, and you can't just wait. And that's why we have these factors that tell whether you take too long, and two circuits have dealt with the timing. Well, so some of that, I think, in terms of waiting too long, and I would say unreasonable delay does not apply to this case. The track factors don't apply to this case. But some of that has to do with what exactly the statute says and whether there is some sort of deadline that commands the agency to act. And in this case, there is no deadline to act. There is no regulation that the Bacanes have pointed to that says that USCIS has a discrete duty to act within a particular period of time, and that's what's required for your unlawful withholding claim. They can't meet that threshold requirement for unlawful withholding. And, you know, there are a number of problems with this unlawful withholding claim. They don't have a discrete action. In their opening brief, they identify it as adjudication of the I-485 application, which is something USCIS does. It's not something the State Department does. They didn't identify any duty of the State Department in their opening briefs. They identified certain regulations for USCIS that relate to notice, but those regulations don't require USCIS to act within a particular period of time or at all. I mean, some applications go abandoned or are withdrawn and are never decided. Could you address redressability? You were going to address it at the beginning, and we got off. Because if they're available now, would it be redressable? So it's not redressable as to the Bacanes because the visas are not available to them because they're not at the front of the line. Where are they? So their priority date, I can't give you an exact number that they're, you know, number 3,580, but their priority date is November 12th. The current visa bulletin is – November 12th when? I'm sorry, November 2012. Okay. And the current visa bulletin is May 2012. Back in October, the visa bulletin, I think, was January 2012. So right now it is moving towards them, but they're still potentially months away. So they need to just sit it out, and eventually it will get to them? But if they get their thing adjudicated, then you – It would have to be denied. Then they would be denied in your position. So it's more paternalistic, as your system seems to be, to make them sit it out and not get adjudicated so they don't get denied. Is that what you – That's basically what you were telling us, that it's kind of a paternalistic rule. It is a benefit to them. To say, oh, we don't want to deny you because it would give all these other – you wouldn't be able to travel home or to your old home. Yes, we're saying it's a benefit to them to wait it out. And the immigration system is extremely complex. And I understand the frustration of all of these people, not just the Bacanes, but everybody in front of them who has also been waiting for a very long time. But, again, that goes back to the limits that Congress has placed on all these visas. It's not that USCIS has said we're not acting on these. It's that USCIS is saying our regulations say we can't approve it until there is a visa number ready to be allocated to you. Does any of this have anything to do with the fraud that was discovered last year and how they had to redo one of the draws and all of that? Do you know what I'm talking – I think you would know what I'm talking about. I vaguely know what you're talking about. But, no, it doesn't relate to these particular employment-based visas here. Okay. Sorry, no, go ahead. And so what I was going to say is that we don't think they meet any of the jurisdictional requirements because they haven't shown standing. They haven't shown the jurisdictional requirements for unlawful withholding. It's not briefed in the Bikani case, but 1252 does pose a hurdle. Yeah, that's what I was going to ask about. Yeah, I don't remember which – it's briefed in one of these cases. It's not briefed in some other cases. Why is it not briefed here? It wasn't raised below with the district court, and it just didn't make it into the briefing in this particular case. But from the government's perspective, 1252 would apply here just as it would apply. Which subsection? So 1252 says no court shall have jurisdiction to review any judgment regarding the granting of relief under 1255. I mean, arguably that doesn't apply here because there hasn't been a judgment. So the Supreme Court in Patel said the meaning of judgment was extremely broad. True, true. And so you could argue that it is a judgment in the view of the attorney general to keep these applications pending as opposed to making that final decision to grant them. I think you could also argue that it's a – it falls under – Correct. I think it could also fall under that, which is – But you didn't raise any of these arguments in your brief, and these are not consolidated cases, are they? That's correct, but it's jurisdictional. And so if the court were to consider it, I think the court could consider it because jurisdiction typically isn't waived. But the reality is you don't get there based on standing or the requirements of unlawful withholding anyway. And then even on the merits in terms of the statute, the text is plain. And the plain text of the statute says that the visa number needs to be available when they file, but 1255A isn't about allocating a visa number. It's about determining the gatekeeping requirements that must be met before the attorney general can exercise his discretion to adjust status. And that's one of the gatekeeping requirements, along with they have to file an application, they have to be eligible. And any other regulations that the attorney general may prescribe or Secretary of Homeland Security now may prescribe in his discretion. And so there's nothing in 1255A that talks about giving a visa number to an applicant at all. The plain text doesn't say anything about it, and that's why you really need to read 1255A in conjunction with 1255B. Because in 1255B, it talks about how the visa number or the number of available visas gets reduced by one for the fiscal year upon approval of the application. And that's mandatory language. The Secretary of State shall reduce by one the number of available visas for the fiscal year. So what you have is how you file in 1255A so that the attorney general can exercise his discretion. And then in 1255B, this is what happens after it's been approved. The State Department assigns the visa. So when you look at, for example, USCIS's regulation that says that they cannot approve an application until a visa number is available or allocated for these particular applicants, that's not inconsistent with 1255A. But it is consistent with 1255B because you have to reduce the available visa numbers by one. And this whole thing is set up to make sure that those statutory limits set by Congress are not violated. And that is what the Ninth Circuit looked at in Bavaria, where they said the text of 1255A is clear. It's plain on its face. It leaves to the discretion of the Secretary of Homeland Security to create regulations. And the regulation that was created, that you can't approve these applications until a visa number is available, is not inconsistent with that plain text. Is there any policy or informal practice even to save back, to purposefully not use these up to save them for a different category of people seeking visas? No. So the fact that there are thousands and thousands wasted and rolled over to a different category of people is just happenstance? I think it's just a question of the timeline it takes to process applications. But if you know that's going to happen every year, then you would have the power to say, you know what, we need more processors and we need to get a head start. Or maybe we need to go ahead and get some approved because we know we're going to have extras and get them in the queue better. That seems like it's a very poor process to waste all of those and have them carry over to a totally different category whenever Congress has said that we're going to do these employment ones. I think all of that is really traceable to Congress and funding, really. If you want to say that we need more processors, that's going to come from Congress. Or from how you administrate things. Not you personally. But all of this processing does take time because they need to do database checks to understand who people are and they need to make sure that they've complied with requirements. They need to get biometrics done. They need to get forms back from the applicants. In this case, the BACANES filed, but it took two requests for evidence from USCIS before their applications were complete. So it was on the BACANES to get that information in, and unfortunately it didn't get in until the numbers had progressed. But even for people who do get their things in quickly, they're not getting them, even though there would have been at the end of the time period. And I don't know the exact number of rollovers in any given year. Do you think it's 60,000? I honestly have absolutely no idea how many it is. I can't answer that. I'm sorry. But I do know that they're... Why don't they roll over to the same category? Because they're following the statute, and for whatever reason, Congress decided that they should roll over to the family-based. I mean, again, it's this complex scheme that Congress set up, and I understand everybody's frustration with it. You know, we've had these cases before. We had the one with the minors who would age out, and the minors would all age out. And so they would get almost to the line, and then by the time they were a majority, then they couldn't take advantage of the process that was exactly designed for them. And immigration cases make for heartbreaking facts, but heartbreaking facts can't make for bad law. And right here, what we're looking at really is have they met the jurisdictional requirements and does the statute require it? And I would say that despite the heartbreaking facts, on the law, the district court's opinion should be affirmed because they don't... Well, it should be affirmed because there's no jurisdiction, which the district court just assumed jurisdiction, but it should also be affirmed because on the merits, they lose. In all of these cases, they've assumed every single one of them. In the Bakane case, the district court assumed that he had jurisdiction. Yeah, but the other one's found. The other one's found jurisdiction. And you know what, there are other cases out there where courts have found no standing. How else could we rule for you? I mean, you have others. You don't just have the jurisdictional argument. Correct. So how else could we decide for you if we thought, like all the district courts, and I'm just assuming argumento, that there was jurisdiction? So I do think the unlawful withholding elements actually fall under jurisdiction, not necessarily under 12b-6, but you could do it under sort of the 12b-6 standard, which is that there is no deadline by which USCIS has to adjudicate these applications, as you found in the Lee v. Jadu case recently. And so because there's no deadline, there's nothing for them to be unlawful withholding. State Department doesn't even adjudicate these applications, so there's nothing that they need to do without an approved application. And so I think you could also find on those facts. Thank you. Thank you. Thank you, Honors. Judge Duncan, I want to address your question about 1252-82b-2. I would point you to the Patel case out of the District of Massachusetts. It, too, is on appeal. That's different from the Patel case from the U.S. Supreme Court. Yes. Yes, Your Honor. What Judge Talwani did there was said, the question of jurisdiction depends on whether this is a discretionary decision or not. That is inextricably intertwined with the merits of the case. And so what she eventually found was, we lost on the merits, and so there was no jurisdiction. And I think that's a fair way to do it because the real question here is, can the agency refuse action? Well, 1255-A says it's part of the Attorney General's discretion to adjust that. So 1255-A says at the beginning, you know, they can pass regulations. The final decision is within their discretion. But then it lays out non-discretionary criteria. Where does it say that? It's marked 1, 2, and 3. Oh, I know, but it doesn't say they're non-discretionary. It says the Attorney General shall have at his discretion to adjust status. And I don't disagree with that, Your Honor, but we can't... You think A, B, and C then constrain the Attorney General's discretion and say, but you don't have discretion if these are met. You have to adjust status, then. I think that's a very common feature of the INA, that you say this is discretionary in the end, but here... If it's a common feature, I would like for it to say it in the statute. Where does it say that in the statute? Your Honor, it sets out three non-negotiable criteria, and that's the issue. And this is, Your Honor, I do believe this is about the purest text, structure, history argument we can do. That is, the text that my opposing counsel doesn't really want to talk about, right, is if you look at A and B, you see a key terminology difference. 1255A says immediately available. That means current. That means the visa bulletin identifies them as someone who a visa is immediately available to them. Section B doesn't use that term. So when the agency claims the plain language of 1255B requires a visa to be immediately available, they know how to use those words. They used it right above it. Instead, they just have to erase a number from any visas available. And I do want to point out a structure argument that the agency doesn't want to talk about and a history argument. And, Judge Duncan, you point out the difference between history of legislation and legislative history. There is a very pointed comment from the House of Representatives report on this exact repeal. That sounds like legislative history. It is. Okay, not the history of legislation. I agree. I thought our court has said, I thought in an opinion by Brother Willett over there, that legislative history is like, just, we don't look at that. Can we hear what the report says? It says that Congress is designating filing as the time for when we determine whether it's immediately available. As my colleague pointed out, they tried every other way. They tried at filing and approval. They tried just at approval. Who said that in the comment? The House of Representatives. The committee? Yes. It's cited in our brief. And, again, while I share skepticism about legislative history, the more pointed and relevant it is, this is about as relevant as it gets. The other thing I want to point out, again, going with this text structure history, the structure, there's a statute, 8 U.S.C. 1153D. This is, I'm just going to read you the language. A spouse or child shall if not otherwise entitled to an immigrant status and the immediate issuance of a visa shall be entitled to the same status and the same order of consideration provided in the respective subsection. What that means, that is completely unworkable under the government's interpretation. What Congress is saying is regardless of whether these visas are immediately available, if your parent or spouse has a visa immediately available to them, you do too, regardless of retrogression. And the Ninth Circuit on the Bavaria case said that we couldn't. Where does it say that? 8 U.S.C. 1153D. Different statute, not 1255A. 1255A is not phrased in that way. You're right. But the structure of the statute, that would be completely unworkable. It would render it meaningless because this says we don't care if there's a visa immediately available. We're going to protect derivatives, spouses and children. And regardless of whether they're entitled to a visa – or regardless of whether there's a visa immediately available, we're going to issue it to them. I don't know how you can do that under the government's theory. Does your client want the relief that you're asking for? They want a green card, yes. But no, the relief you're asking for is to be adjudicated. Yes. And we've just heard that if they were adjudicated today, they would lose because they're not may. I think it's may that counsel said. And since they're not may, they wouldn't get the visa. And so then not only would they not get the visa, but they also wouldn't be able to travel and they would have to renegotiate their work situation. And all of that would have to start over. Is that not true? No. What is not true about that? If the denial was based on a belief that they required a visa to be immediately available at approval, that would be an unlawful denial under our interpretation of the statute. So you would litigate that? Yes. Okay. And my client's an H-1B. He can travel. He can work. He wants a green card because the disparity of benefits between a non-immigrant H-1B and a permanent resident are vast. He's been in the country for 19 years. It's the H-1Bs that had the fraud issue that I was talking about earlier. It might be. It is. I see my time is up. Thank you. Okay. Thank you. And I'm not saying your client was involved in that at all. Please, I'm just recalling the question I asked earlier. Thank you.